UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE | CASE NO. 05-13410 |
| **DIXIE PRODUCE & PACKAGING, L.L.C.** | SECTION "B" |
| *Debtor* | CHAPTER 11 |
| **DI MARE HOMESTEAD, INC., et al.** *Plaintiffs* | |
| **VERSUS** | ADV.P.NO. 05-01098 |
| **DIXIE PRODUCE & PACKAGING, L.L.C., et al.** *Defendants* | |

## MEMORANDUM OPINION

This matter came on for hearing on August 24, 2006 as a trial on the complaint of DiMare Homestead, Inc. and DiMare Ruskin, Inc. alleging Perishable Agricultural Commodities Act ("PACA") claims.

For the reasons set forth below, the court will enter a judgment granting the claims for the total principal on the invoices and denying the claims for interest and attorneys' fees.

**I.      Facts/Background**

The debtor, Dixie Produce & Packaging, L.L.C. ("Dixie"), has purchased produce from the intervening plaintiffs, DiMare Homestead, Inc. and DiMare Ruskin, Inc. (collectively referred to as "DiMare") for over 25 years.  On April 27, 2005, Dixie filed a

1

petition for relief under Chapter 11 of the Bankruptcy Code found at 11 U.S.C. § 101 *et seq.* At that time, the debtor owed DiMare for unpaid invoices from December 2004 through February 2005. DiMare Ruskin and DiMare Homestead each submitted unpaid pre-petition invoices supporting its claim for the principal amounts of $50,102.10 and $24,183.20 respectively.

Each invoice that DiMare sent to Dixie stated that "all sales [are] due 10 days from acceptance" and indicated "other charges" including interest at 1.5% per month and "attorneys fees necessary to collect payment."[1] Additionally, DiMare included the statutory language ("PACA notice") required to preserve a PACA trust claim as set forth in 7 U.S.C. §499e(c) and 7 C.F.R. §46.46(f). The invoices read:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(C)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivable or proceeds from the sale of these commodities until full payment is received.[2]

DiMare and Dixie had no other written agreements that outlined the terms of their sales.

On May 25, 2006, after hearing the debtor's motion for partial summary judgment as to the issue of the PACA claimants' entitlement to attorneys' fees, the court ruled that no attorneys' fees may be paid from the PACA trust.[3] After that ruling, all intervening PACA claimants other than DiMare reached settlement agreements with Dixie.

---

[1] Exhibits A and B.
[2] Exhibits A and B.
[3] P-478 Order Granting in part, Denying in part Motion for Partial Summary Judgment on Issue of PACA Claimants' Entitlement to Attorneys' Fees (5/25/2006).

2

## II.   Contentions of the Parties

DiMare contends that it adequately preserved its PACA trust rights by printing the PACA notice and 10-day payment terms on each invoice and is therefore owed the full principal amount plus interest. DiMare states that it never agreed to extend payment terms beyond ten days either orally or in writing. Further, because Dixie did not object to the terms for attorneys' fees and interest present on each invoice, DiMare contends they were valid terms of the contract.

Dixie argues that DiMare extended its payment terms beyond ten days, both by course of dealing, and through an agreement with an independent broker, Jerry Simmons. Dixie asked Mr. Simmons to inform all sellers that Dixie would be unable to pay invoices in less than 60 days. Paul DiMare, the president of DiMare, asserts that he was never informed of such payment terms nor did he agree to them. Still, despite the 10-day payment terms, Mr. DiMare admitted that DiMare rarely, if ever, actually received payment from Dixie within 30 days.

The parties also dispute whether Anthony Peraino, president of Dixie, is secondarily liable for the debts owed to DiMare. Dixie argues that because DiMare failed to preserve its PACA trust rights, it cannot hold Mr. Peraino liable for that trust. Dixie further asserts that DiMare failed to name Mr. Peraino as a party in the joint pretrial order. DiMare's initial complaint filed in district court on February 25, 2007 and its amended complaint filed in this court on October 9, 2005 both name Mr. Peraino as an

individual defendant for his breach of fiduciary duty to PACA trust beneficiaries.

**III.    Law and Analysis**

PACA[4] was enacted in 1930 to regulate the sale of perishable commodities and "promote fair dealing" in the sale of fruits and vegetables.[5] In 1984, Congress added § 499e which created a "floating trust" on the perishable commodities sold and the products and proceeds derived from the commodities to protect sellers who "were often unsecured creditors of buyers whose creditworthiness they were unable to evaluate before the sale."[6] Under PACA, the purchaser is required to preserve the trust assets until full payment has been made to the seller and, in case of default, the seller's claims have priority over other secured and unsecured creditors for the full amount of the claim.[7]

To establish the existence of a PACA trust, the seller must show that:

(1)    the commodities sold were perishable agricultural commodities;
(2)    the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker;
(3)    the transaction occurred in interstate or foreign commerce;
(4)    the seller has not received full payment on the transaction; and
(5)    the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law.[8]

---

[4] 7 U.S.C. §§ 499a-499s.
[5] *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 413 (5th Cir. 2003).
[6] *Id*. (citing *Endico Potatoes Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995)).
[7] *Id.* (citations omitted).
[8] *Reaves Brokerage Co. v. Fidelity Factors, L.L.C.*, No. CIV.A.3:99-CV-2848M, 2002 WL 32125950, at *4 (N.D.Tex. Feb. 8, 2002), *aff'd*, 336 F.3d 410 (5th Cir. 2003) (citing 7 U.S.C. § 499e).

In this case, the first four elements listed above are clearly established; DiMare Homestead and Ruskin, Florida companies, sold fresh fruits and vegetables to Louisiana-based Dixie and have not received full payment for produce sold between December 2004 and February 2005. To satisfy the fifth element, the seller must have notified the purchaser of its intent to preserve the PACA trust benefits within the time period prescribed by PACA.[9] In 1995, Congress amended PACA to allow sellers to provide notice on invoices given to the buyer.[10] DiMare included the exact language as prescribed in PACA on each invoice delivered to Dixie.

If the parties agree to use the default payment terms provided in the PACA regulations (payment within ten days of acceptance of produce), the notice of intent on the invoices is all that is necessary.[11] "On the other hand, if the parties agree to payment terms greater than 10 days after acceptance, but in no event more than 30 days after acceptance, this agreement must be in writing. The seller must also disclose these non-statutory payment terms 'on invoices, accountings, and other documents relating to the transaction.'"[12] Dixie asserts that DiMare cannot meet the notice requirement because the parties had an oral agreement to extend payment terms beyond the 30 day PACA limit.

### A. DiMare Preserved Its PACA Trust Rights

---

[9] *Id.* (citing 7 U.S.C. § 499e(c)(4)-(5)).
[10] 7 U.S.C. § 499e(c)(4).
[11] *Overton Distributors, Inc. v. Heritage Bank*, 340 F.3d 361, 365 (6th Cir. 2003) (citing 7 C.F.R. § 46.46(e)(1)).
[12] *Id.* (quoting 7 U.S.C. § 499e(c)(3)).

The court finds that DiMare and Dixie did not reach an agreement to extend payment terms beyond ten days and therefore DiMare preserved its PACA trust claim. Although the Fifth Circuit has yet to consider the question, the majority of courts that have addressed oral agreements to extend payment terms have held that "[o]ral agreements have no effect on produce sellers' trust protection."[13] The only waiver of a seller's trust protection under PACA is a written agreement that extends payment terms beyond 30 days.[14] An agreement sufficient to extend payment terms may be an informal writing, such as an email, letter, or fax, as long as it satisfies the Statute of Frauds.[15]

The Eighth Circuit, in *Hull Co. v. Hauser's Foods, Inc.*, held that an oral agreement to a payment due date 45 days after delivery had "no effect" on the seller's PACA trust protection when the invoice stated that payment was due ten days after delivery.[16] The District Court reasoned, and the Court of Appeals agreed, that the PACA regulations "bar[] trusts only where there is a *written* agreement in excess of 30 days."[17]

---

[13] *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 781 (8th Cir. 1991). *Accord Reaves Brokerage Co.*, 2002 WL 32125950; *A&J Produce Corp v. CIT Group/Factoring, Inc.*, 829 F.Supp. 651 (S.D.N.Y. 1993). *See also Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 671 (7th Cir. 2002) (holding that letters and faxes sufficient to constitute an agreement under the Statute of Frauds to extend payment post-default beyond 30 days forfeit PACA trust benefits); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998) (The Third Circuit construed PACA liberally and found that "the writing requirement is related to the enforceability of an agreement to extend a payment term, but does not disqualify an unpaid seller from receiving trust benefits" where sellers complied with notice provisions but failed to reduce to writing an agreement that extended payment terms beyond ten, but less than 30, days).
[14] *Reaves Brokerage Co.*, 2002 WL 32125950, at *5 (quoting *A&J Produce Corp v. CIT Group/Factoring, Inc.,* 829 F.Supp.651, 655 (S.D.N.Y. 1993)).
[15] *Patterson Frozen Foods*, 307 F.3d at 671.
[16] *Hull*, 924 F.2d at 778, 81.
[17] *Id.* at 779 (citing 7 C.F.R. §46.46(f)(2)).

> The statute and regulations clearly contemplate that the parties must set forth such agreements in writing to be effective. Moreover, the regulations do not recognize oral agreements for a very good reason. Oral agreements to extend the prompt payment requirements essentially violate PACA.[18]

Several courts have followed the Eighth Circuit's approach in *Hull*.[19] In *Reaves Brokerage Co.*, the seller's invoices required payments within ten days of receipt of the produce.[20] The buyer argued, however, that through course of dealing and an oral agreement, the seller actually extended payment terms beyond the 30 day maximum.[21] The court adopted the reasoning of the Southern District of New York in *A&J Produce Corp.* that "any attempt to extend the payment term by oral agreement or by course of dealing is ineffective and cannot result in the waiver of PACA trust protection."[22] The waiver of a seller's PACA rights requires a written agreement to extend payment terms beyond thirty days, and as there was no evidence of such agreement in *Reaves*, the seller's trust rights were preserved.[23]

In contrast, the debtor cites the Second Circuit's holding in *American Banana Company, Inc. v. Republic of New York* which provides that "where […] a seller agrees-orally or in writing-to a payment period exceeding thirty days, it forfeits trust

---

[18] *Id.* at 781-82 (citations omitted).
[19] *See e.g. A&J Produce*, 829 F.Supp. 651; *Reaves Brokerage Co.*, 2002 WL 32125950; *Continental Fruit Co. v. Thomas J. Gatziolis & Co.*, 774 F.Supp. 449, 453 (N.D.Ill. 1991) (holding that evidence of a course of dealing to accept payment beyond 30 days does not forfeit a seller's rights to PACA trust protection absent a written agreement).
[20] *Reaves Brokerage Co.*, 2002 WL 32125950, at *4.
[21] *Reaves Brokerage Co.*, 2002 WL 32125950, at *5.
[22] *Id.* (citing *A&J Produce*, 829 F.Supp at 655).
[23] *Id.*

protection."[24] In *American Banana*, the court considered a post-default agreement to extend payment terms, and found that Congress's underlying purpose in PACA, to protect sellers in "short-term payment arrangements," extended to post default agreements.[25]

In its analysis, the Second Circuit stated that neither the text of PACA nor its regulations required that a "*provable post-default agreement* extending a payment period beyond thirty days must, without exception, be reduced to writing before it will disqualify a seller from PACA's trust protection."[26] The court noted that the regulations provide that "[p]arties who elect to use different times of payment ... must reduce their agreement to writing before entering into the transaction" but focused on its interpretation of Congress's intent rather than the plain meaning of the regulation.[27] The court stated that the regulation was not intended to permit parties to enter into agreements that violate PACA so long as they are not preserved in writing.[28]

This court finds the opinion of the Eighth Circuit in *Hull* to be most persuasive and adopts that reasoning. An oral agreement is insufficient to preserve a seller's trust protection, and is likewise insufficient to lose such protection. The regulations explicitly require parties to make a *written* agreement to extend payment terms beyond ten days and

---

[24] *American Banana Company, Inc. v. Republic of New York*, 362 F.3d 33, 47 (2d Cir. 2004).
[25] *Id.* at 43-44 (The court concluded that there was no "meaningful difference between pre-transaction and post-default agreements in light of [the] legislative history.").
[26] *American Banana Company, Inc.*, 362 F.3d at 46 (emphasis added).
[27] *Id.* (quoting 7 C.F.R. § 46.2(aa)).
[28] *Id.*

to maintain a copy in their records of the agreement.[29] The burden of proof is placed on the party claiming an agreement to extend payment terms to show the existence of "such" an agreement.[30] This court agrees with the Eighth Circuit that "it would be incongruous to disregard oral agreements for purposes of enforcing PACA but recognize them for the purpose of voiding the seller's protection under the trust."[31]

Even had the court been persuaded by Dixie's legal argument, Dixie failed to establish that an oral agreement to extend payment terms beyond ten days was reached. The only evidence presented of such an agreement was Mr. Peraino's testimony that he asked an independent broker, Mr. Simmons, to advise all sellers that Dixie would be unable to meet payment terms of less than 60 days. There was no evidence that DiMare or its salespeople were informed of Dixie's payment situation or that DiMare accepted this alteration in the printed payment terms. The parties had a written agreement, as stated on each invoice, to receive payment within ten days of receipt. The seller appropriately preserved its PACA trust protection.

### B. Interest and Attorneys' Fees

PACA does not provide for interest or attorneys' fees. Where a federal statute neither provides for nor precludes prejudgment interest, the court may look to whether awarding such interest "would further the congressional policies embodied in the act."[32]

---

[29] 7 C.F.R. § 46.2(aa)(11).
[30] *Id.*
[31] *Hull*, 924 F.2d at 782.
[32] *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 n.11 (5th Cir. 1991) (citing *Guidry v. Booker Drilling Co. (Grace Offshore Co.),* 901 F.2d 485, 488 (5th Cir.1990)).

In contrast, "an award of attorneys' fees to a prevailing party under a statute which is silent on the issue, unlike the inquiry into prejudgment interest, is not a matter of evaluating whether the award is consistent with the statute's purposes."[33] The general "American Rule" is that a prevailing party may not recover attorneys' fees absent statutory authorization.[34] The court finds it significant that PACA does not provide such statutory authorization for attorneys' fees.[35] Congress certainly knew how to provide for attorneys' fees in PACA when it intended to do so.[36]

Interest and attorneys' fees may be awarded on an unsecured basis as a result of DiMare's contractual agreement with Dixie, but the court must first look to state law to determine whether a valid contractual agreement for attorneys' fees and interest existed.

### 1. Choice of Law

Contract issues are matters of state law. "When disposition of a federal question requires reference to state law, federal courts are not bound by the forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy."[37]

---

[33] *In re W.L. Bradley Co*, 78 B.R. 92, 95 (Bankr. E.D. Pa. 1986).
[34] *Aleyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 245 (1975) (exceptions to the "American Rule" include a party who acted in bad faith, the creation of a common benefit/fund, and enforceable contract).
[35] *See Golman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 352 (5th Cir. 2000).
[36] *See* 7 U.S.C. § 499g(c) (providing for attorneys' fees for an appellee who prevails in an appeal from a reparation order for violation of 7 U.S.C. §499b); *In re W.L. Bradley*, 78 B.R. 92, 95-96 (Bankr. E.D. Pa. 1987).
[37] *In re Crist,* 632 F.2d 1226, 1229 (5th Cir. 1980) (citing Moore's Federal Practice P. 0.325).

> [Regarding] issues of state law arising in the context of a bankruptcy proceeding… [w]here the transaction has multistate contacts, "the determination of which particular state's law should apply requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order to best accommodate the equities among the parties to the policies of those states.;B0099;B0099"[38]

The facts in this case support following Louisiana state law. The debtor (buyer) is located in Louisiana. The produce was delivered to Louisiana. Louisiana is where the PACA trust fund is located. Finally, DiMare chose Louisiana as the forum state when it filed as plaintiff in the U.S. District Court for the Eastern District of Louisiana.

### 2. Louisiana Law

Under Louisiana law, "a printed statement on the bottom of a delivery ticket or invoice providing for interest and attorney fees, in case of default, [does] not constitute a written agreement to pay… absent a showing that the buyer knew or should have known of that statement."[39] As such, the terms for interest and attorneys' fees printed on the bottom of DiMare's invoices do not create a binding contract.

In some cases, however, "plaintiffs [may be] entitled to reasonable attorney fees based on the Louisiana open account statute" if plaintiffs' demand letters are adequate.[40] Under Louisiana obligations statute, defendants are liable for attorneys' fees associated with collection on an open account if they fail to pay the amount owed within 30 days

---

[38] *In re Quinlivan*, 347 B.R. 811, 816 (Bankr. E.D. La. 2006) (quoting *Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir.1981)).
[39] *Advance Polybag, Inc. v. LTD Packaging Corp.*, 1992 WL 125316 (E.D. La.) at *2 (citing *McJunkins Tire Center, Inc. v Barnhill,* 488 So.2d 1048 (La.App. 2 Cir. 1986)).
[40] *Id.*

after the claimant sends a written demand.[41] Citation and service of a petition is sufficient to show a written demand.[42] This statute is to be construed strictly, however, and the written demand must correctly and exactly set forth the amount owed.[43]

The Louisiana Supreme Court has denied attorneys' fees under the open account statute when the accrued interest charge on a written demand was found not to be owed because the parties had no oral or written agreement for interest.[44] The Court has found "no difference whether the excessive amount [demanded] was interest rather than principal."[45]

The standards for the open account statute are not met in this case. Here, Dixie and DiMare had no agreement for interest and attorneys' fees beyond the language printed on the invoice. Such language is insufficient to form a contract under Louisiana law. Because DiMare's pleading demanded interest for which there was no contractual basis, the demand did not set forth the correct amount owed and no attorneys' fees may be awarded under the open account statute.

Because there was no contractual agreement for interest and attorneys' fees and because the standards for the Louisiana open account statute were not met, interest and

---

[41] LSA-R.S. 9:2781 (An "'open account' includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions…," LSA-R.S. 9:2781(D)).
[42] LSA-R.S. 9:2781(A).
[43] *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014, 1015-16 (S. Ct. La. 1984) (citing *A Better Place Inc. v. Giani Investment Co.*, 445 So.2d 728 (1984).
[44] *Id.* at 1015 (citing *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc*, 437 So.2d 1198, 1199 (La. App. 5th Cir 1983).
[45] *Id.* at 1016.

attorneys' fees will not be awarded to DiMare.

### C. Secondary Liability of Debtor's President

If Dixie's assets are insufficient to satisfy the PACA liability, Mr. Peraino is secondarily liable as he was in a position to control assets.[46] The Fifth Circuit has held that "individual shareholders, officers, or directors of a corporation who are in a position to control assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA."[47]

It is undisputed that Mr. Peraino is the president of Dixie. As such, he was in a position to control Dixie's assets. Mr. Peraino's failure to preserve the PACA trust was a breach of his fiduciary duty to DiMare.[48] Because the court finds that DiMare preserved its PACA trust rights and Mr. Peraino breached his duty to preserve that trust, Mr. Peraino is secondarily liable for the trust claims.

### IV. Conclusion

Dixie failed to show the existence of an agreement to extend payment terms sufficient to show that DiMare waived its PACA trust rights. Accordingly, DiMare is entitled to the payment of the total principal on its invoices from the PACA trust. DiMare's request for interest and attorneys' fees are denied as terms printed on invoices

---

[46] *See Golman-Hayden*, 217 F.3d at 351.
[47] *Id.* (citing *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997)).
[48] *See id.*

do not constitute a contract. Finally, Mr. Peraino, as president of the debtor, is secondarily liable for the PACA trust claims if the trust assets are insufficient.

New Orleans, Louisiana, March 23, 2007.

*Jerry A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge